IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | **Case No. 1:90-cr-0135-PWG-1** |
| **LINWOOD WILLIAMS** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORDANDUM OPINION**

Before the Court is Defendant Linwood Williams' "Emergency Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(2) Based on the Retroactive Application of Amendment 782 to the U.S. Sentencing Guidelines," ECF No. 1289. The Government has filed a response in opposition, ECF No. 1296, and Mr. Williams a reply, ECF No. 1299. I have carefully reviewed the submissions and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons discussed below, Mr. Williams' motion is GRANTED and I will issue an amended judgment imposing a sentence of time served.

**Background**

On March 20, 1991, after a 66-day trial, a jury convicted Mr. Williams on eight counts of a 36-count indictment. The counts of conviction were: Conspiracy to Distribute and Possess with Intent to Distribute Heroin and Cocaine, in violation of 21 U.S.C. § 846 (Count One); Attempted Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. § 841(a)(1) (Count Three); Possession with Intent to Distribute Heroin and Cocaine, in violation of 21 U.S.C. § 841(a)(1) (Counts Five through Seven); Money Laundering, in violation of 18 U.S.C. § 1956 (Counts Fourteen and Fifteen); and Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1)

1

(Count Sixteen). Gov't Opp. 1–2 (citing Presentence Report ("PSR") at 1). The case stemmed from a large-scale drug distribution operation in and around Baltimore, Maryland. As the Government states, Mr. Williams was the "chief leader and organizer" of the organization and "obtained the 'raw,' uncut heroin from at least six heroin importers and then oversaw its distribution" to dealers who in turn distributed to street-level dealers. Gov't Opp. 5. Mr. Williams transacted in large quantities of heroin, regularly receiving between $16,000 and $18,000 as payment in exchange for his deliveries. *Id*. At sentencing, Judge Frank A. Kaufman imposed a sentence of mandatory life imprisonment plus 130 years. Def.'s Mot. 3, n. 2.

While Mr. Williams was only convicted in this case of one firearms count, the Government notes that he has a history of weapons charges, including a 1986 case involving an Uzi submachine gun, a .38 caliber firearm, and a bullet proof vest. Gov't Opp. 6. According to both the Government and the presentence investigation report, Mr. Williams convinced co-conspirators to testify that Mr. Williams lacked knowledge of the firearms and was subsequently acquitted at trial on charges related to the 1986 incident. Gov't Opp. 6–7; PSR at 7–8 ¶ 21, 21 ¶ 70, 27 ¶ 104. This was not the only time Mr. Williams ensured favorable testimony for himself in the face of serious charges: in 1988, Baltimore City Police officers tried to stop Mr. Williams—who successfully fled—and recovered only his jacket, which contained his birth certificate and approximately an ounce of heroin. Gov't Opp. 7 (citing PSR at 8 ¶ 23). Mr. Williams "convinced a co-conspirator to testify at [his] trial that [the co-conspirator] was the person officers stopped and not [Mr. Williams]." Gov't Opp. 7 (citing PSR at 8 ¶ 24). Mr. Williams was again acquitted. PSR at 27 ¶ 105.

On April 17, 1990, federal agents raided Mr. Williams' organization, executing twenty search warrants and making eighteen arrests. Gov't Opp. 7. They recovered significant quantities

of heroin, cash in excess of $250,000, and a 9mm semi-automatic pistol from Mr. William's house. *Id*. at 8.  Mr. Williams proceeded to trial thereafter and following his conviction and sentencing has served over 30 years of his life-plus-130-years sentence.  Def.'s Mot. 1, 3.

## **Discussion**

Under 18 U.S.C. § 3582(c)(2), a district court may "reduce an otherwise final sentence" when the basis for its imposition was a Guidelines provision that the Commission later amended. *Dillon v. United States*, 560 U.S. 817, 821 (2010).  But the court only may do so if the Commission made the amendment retroactive, and "[a]ny reduction must be consistent with applicable policy statements issued by the Sentencing Commission." *Id.*  Section 3582(c)(2) reads in full:

> The court may not modify a term of imprisonment once it has been imposed except that in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*Dillon* interpreted § 3582(c)(2) narrowly, instructing that § 1B1.10 of the Sentencing Guidelines—which governs § 3582(c)(2) reductions—requires a court engaging in resentencing to substitute only the retroactive amendment(s) "for the corresponding guideline provision that [was] applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." *Dillon*, 560 U.S. at 827 (citing § 1B1.10).  Upon determining that a defendant is eligible for a reduced sentence, the reviewing court proceeds to "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted . . . under the particular circumstances of the case." *Id*

3

The issues here are straightforward. The parties agree that Mr. Williams is eligible for a reduction under § 3582(c)(2) due to Amendment 782. Amendment 782 lowered the base offense level for Mr. Williams' drug convictions by two levels. Originally, the sentencing court determined the base offense level to be 36 due to the charged conspiracy involving at least 10 kilograms of heroin. Def.'s Mot. 2; PSR at 20 ¶ 69. Now, Mr. Williams' base offense level would be reduced to 34; with the same enhancements applied at sentencing, his final offense level totals 42, which, combined with his criminal history category of VI, results in a guidelines sentence of 360 months to life. The parties agree on these facts. Def.'s Mot. 2–3; Gov't Opp. 1–2. The dispute here is whether the 18 U.S.C. § 3553(a) factors (which both *Dillon* and § 3582(c)(2) require me to assess), militate in favor of a sentence reduction. I will consider each applicable factor in turn.

*History and characteristics of the defendant; nature and circumstances of the offense*

Mr. Williams' offenses here undeniably were quite serious: over a period of years he distributed large quantities of heroin throughout Baltimore in the late 1980s, fueling addiction and perpetuating human suffering. While Mr. Williams suggests he was in no way tied to any allegations of violence, Def. Mem. 8, this Court has recognized the inherent connection between violence and drug distribution. *United States v. Taylor*, No. 17-cr-0268 PWG, 2020 WL 6322620, at *3 (D. Md. Oct. 28, 2020). Indeed, Mr. Williams was convicted of one count of unlawful possession of a firearm, Def's Mot. 2, and the Government details other allegations (notably ending in acquittal under suspicious circumstances) of violent conduct predating the convictions in this case. Further, as Judge Kaufman detailed at sentencing:

> I have not the slightest question or a doubt but that there are any number of persons, a large number of persons, who are not in this world anymore because of drugs that they used that came from the Linwood Rudolph Williams' organization and its

4

>activities. There are many more probably who are still alive, families of those who are alive and dead, whose lives have been ruined by the use of those drugs.

Gov't Opp. 9 (citing Sent. Transcript, 45–46, Ex. A to Gov't Opp.).

True as this may be, it cannot be denied that these events concluded more than 30 years ago, and since that time, Mr. Williams has been incarcerated in the Bureau of Prisons with, until recently, no prospect of ever being released. Despite that, Mr. Williams sought to better himself. He took up writing and mentored younger prisoners. As Defense counsel notes, Mr. Williams has published ten books and a screenplay. Def. Mot. 8. He has pursued educational opportunities, completing courses in African American History, computer technology, accounting, legal research, and parenting, to name some examples. Ex. B to Def.'s Mot. (Individualized Reentry Plan), ECF No. 1289-2 at 1. And his efforts have spanned decades. According to the Bureau of Prisons' ("BOP") record, Mr. Williams completed his GED on February 20, 1992 and has listed among his "Long Term Goals" a desire to complete at least 15 programs by January 20, 2024. *Id.* 1–2. So while Mr. Williams was surely a danger to the community and undoubtedly deserving of a severe prison sentence for his conduct in the late 1980s, the record makes clear that he successfully has undertaken substantial rehabilitative efforts and, in the § 3553(a) analysis, this militates in favor of resentencing.

As to the Government's argument that his eight infractions within the BOP do not favor release, Gov't Opp. 11–12, I find that Mr. Williams' lack of a perfect disciplinary record does not weigh against a sentence reduction. His infractions were infrequent and never involved allegations of violence. Also, he has gone infraction-free since 2014. Ex. B to Gov't Opp. ECF No. 90-135.

*Need for the sentence imposed*

Distribution of the quantities of narcotics in which Mr. Williams dealt undoubtedly required imposition of a substantial sentence. But the 30 years that he already has served cannot

be regarded as anything other than "substantial." Now, the need for him to continue serving his original sentence is far less apparent. Mr. Williams is 66 years old and suffers from chronic health conditions, including hypertrophic obstructive cardiomyopathy and congenital mitral insufficiency, both of which are heart conditions that include a range of symptoms from shortness of breath to, in extreme cases, heart arrhythmias and death. Def.'s Mot. 9–10 (citing Mayo Clinic, *Hypertrophic Cardiomyopathy* (June 20, 2020), https://www.mayoclinic.org/diseases-conditions/hypertrophic-cardiomyopathy/symptoms-causes/syc-20350198; Mayo Clinic, *Mitral Valve Regulation* (May 17, 2019), https://www.mayoclinic.org/diseases-conditions/mitral-valve-regurgitation/symptoms-causes/syc-20350178). Further, Mr. Williams cites findings from the Sentencing Commission that suggest offenders over 40 years old and those convicted of drug offenses are the least likely to recidivate. Def.'s Mot. 11–12 (citing U.S. SENT'G COMM'N, MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES (2004), at Ex. 9 and Ex. 11 (available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf).

The Government argues that Mr. Williams continues to remain a danger to the community in light of his now distant violent criminal history, Gov't Opp. 10. I agree that his past criminal conduct continues to be relevant, but if it is *dispositive*, as the Government apparently views it, then the possibility of Amendment 782 reductions would be illusory—theoretically available, but in reality out of reach for any defendant with a bad prior criminal history, regardless of long he has served, or how much effort he has expended to rehabilitate himself. Such a position is unpersuasive after reflecting upon Mr. Williams' rehabilitative accomplishments while incarcerated, an inquiry the Supreme Court has endorsed. *United States v. Pepper*, 562 U.S. 476,

491–92 (2011) ("[E]vidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing. . . . [T]he extensive evidence of Pepper's rehabilitation since his initial sentencing is clearly relevant to the selection of an appropriate sentence in this case."). In sum, if Mr. Williams' prior criminal history remains a debit on his § 3553(a) ledger, then his overall good conduct while incarcerated, and sustained rehabilitative efforts must, in fairness, be a counterbalancing credit. Mr. Williams' efforts upon entering the BOP greatly diminish the need for the original sentence and for his continued incarceration. He has since taken up writing, with an emphasis on helping "younger men to choose a different path," Def.'s Reply 6, ECF No. 1299, and is remorseful for what he states is the irreparable harm he caused in Baltimore, *id*. at 7 (citing Ex. B to Def's Reply, letter from Mr. Williams). But should Mr. Williams fall back into his old ways, the Court retains the authority to impose additional incarceration for violating the terms of his supervised release, which amounts to a weighty incentive to avoid any criminal activity.

*Types of sentence and sentencing range*

The basis of Mr. Williams' motion is that, under Amendment 782 to the sentencing guidelines, his final offense level is now reduced by two, from 44 to 42, after accounting for a base offense level of 34, U.S.S.G. § 2D1.1(c)(3), a four-level enhancement for role, a two-level enhancement for possessing a firearm, and a two-level enhancement for obstruction. Def. Mot. 6. Combined with his criminal history category of V, Mr. Williams' guidelines range is, as noted, 360 months to life.

Sentencing Mr. Williams to a period of time served is within this guidelines range and is well above the minimum guidelines-compliant sentence. Mr. Williams has served, day-for-day, over 31 years in prison.

*The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct*

Resentencing in this case accomplishes the goal of avoiding sentencing disparities on two fronts: the disparities between Mr. Williams and his co-defendants, as well as the disparities between Mr. Williams and defendants sentenced today for similar conduct.

First, Mr. Williams details the sentences his co-defendants served, emphasizing that Mr. Williams is the lone remaining defendant in this case still serving a sentence of incarceration. The motion lists several of Mr. Williams' suppliers, who were co-defendants, and their release dates, with releases occurring in 1999,[1] 2005,[2] 2010,[3] 2012,[4] and 2016.[5] Def.'s Mot. 15.

Second, Mr. Williams recounts recent instances of resentencing in this Court where judges reduced sentences under circumstances like those here. In *United States v. Cheese,* No. ELH-98-0259, 2020 WL 3618987, at *1 (D. Md. July 2, 2020), Judge Hollander found that a 28-year sentence sufficiently accomplished the goals of § 3553(a) where the defendant was originally sentenced to life in prison for after being convicted at trial of conspiracy to distribute heroin, cocaine, and cocaine base, as well as two counts of possession of a firearm by a convicted felon. Similarly, Chief Judge Bredar reduced a life sentence[6] to a 330-month sentence where the defendant was convicted in 1998 of conspiracy to distribute crack cocaine and heroin, distribution of crack cocaine, and distribution of crack cocaine within one thousand feet of a playground and school. *United States v. Hill,* No. JKB-96-0399, 2020 WL 2089379, at *1 (D. Md. Apr. 30, 2020). These cases, where the defendants were convicted of serious charges similar to those of Mr.

---

[1]   *United States v. Vincent Emerson Thomas*, K-90-0166
[2]   *United States v. Martins Idusuyi*, MJG-90-0252
[3]   *United States v. Kenneth Osobor*, MJG-90-0272
[4]   *United States v. Daniel Oriakhi*, MJG-90-252
[5]   *United States v. Felix Oriakhi*, K-90-0072
[6]   ECF No. 435 in Case No. 96-00399-JKB (noting imposition of life sentence on Count 1).

Williams, suggest Mr. Williams' life sentence amounts to a significant sentencing disparity between similarly situated defendants.

Mr. Williams also notes cases with clearer links to violence than his own case where judges imposed shorter sentences than the one Mr. Williams is currently serving. Def.'s Mot. 14 (citing, *United States v. Bazemore*, No. CCB-16-0597 (imposing 285 months and 10 days total imprisonment after defendant pleaded guilty to a racketeering conspiracy under 18 U.S.C. § 1962(d) and conspiracy to distribute and possession with intent to distribute controlled substances under 21 U.S.C. § 846, Amended Judgment ECF No. 510, after defendant admitted his participation in a murder, Plea Agreement at 10, ECF No. 368); *United States v. Plummer,* No. GLR-17-0223 (imposing 25-year sentence upon guilty plea to racketeering where defendant admitted in statement of facts to firing multiple gunshots at a moving vehicle, resulting in the death of a three-year-old girl, Plea Agreement at 10, ECF No. 368; Judgment, ECF No. 627).

Because Mr. Williams continues to serve his sentence, and has served more time than defendants in the above cases, I find that a sentence reduction here is necessary to avoid an unwarranted sentencing disparity.

## Conclusion

For the above reasons, it is this 28th day of April, 2021 hereby ORDERED that Mr. Williams' "Emergency Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(2) Based on the Retroactive Application of Amendment 782 to the U.S. Sentencing Guidelines," ECF No. 1289, is GRANTED.[7] The Court will enter an amended Judgment in accordance with this order and Mr. Williams shall be released after completing a 14-day quarantine as directed by the BOP.

---

[7] Mr. Williams has also filed a *pro se* motion for compassionate release, ECF No. 1286, which is denied as moot.

_____/s/_____

Paul W. Grimm
United States District Judge